**Opinion issued July 31, 2018**



In The

# Court of Appeals

For The

# First District of Texas

———————————

**NO. 01-17-00274-CR**

**NO. 01-17-00275-CR**

———————————

**PAUL ZURITA, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 22nd District Court**
**Hays County, Texas**
**Trial Court Case Nos. CR-14-0693 and CR-16-0646**

---

**MEMORANDUM OPINION**

Paul Zurita was indicted on five counts of sexual assault of a child and three counts of indecency with a child by sexual contact. *See* TEX. PENAL CODE §§ 20.011(a)(2), 21.11. The charges were tried before a Hays County jury, which

found Zurita guilty as charged on all counts.[1]  The jury sentenced Zurita to eight years' confinement on each of the sexual-assault counts and ten years' confinement, suspended, on each of the indecency counts.  The trial court ordered that the sentences for the sexual-assault counts be served concurrently and those for the indecency counts be served concurrently, but that the sexual-assault punishment be served consecutively with the indecency punishment.  The trial court also made affirmative findings, including family violence findings, on all counts.

On appeal, Zurita contends that the trial court erred in (1) orally instructing the jury during closing argument; (2) allowing the State to comment on his silence during closing argument; (3) admitting the mother's outcry-witness testimony; (4) finding the complainant competent to testify; (5) allowing the sexual-assault nurse examiner to testify concerning the complainant's medical history; and (6) entering judgment on the verdict without a sufficient in-court identification of him as the perpetrator.  We affirm the trial court's judgments of conviction.

---

[1] Pursuant to the Texas Supreme Court's docket equalization powers, this appeal was transferred from the Third Court of Appeals to this Court on April 14, 2017. *See* TEX. GOV'T CODE § 73.001; Order Regarding Transfer of Cases From Courts of Appeals, Misc. Docket No. 17-9066 (Tex. Mar. 28, 2017). We are unaware of any conflict between precedent from the Third Court of Appeals and that of this court on any relevant issue. *See* TEX. R. APP. P. 41.3.

# BACKGROUND

Josie was born in 1997, three years after her parents, Lilly and Ron, were married.[2] Zurita is Ron's brother and Josie's uncle.

When Josie started public school, she was diagnosed with mild intellectual disability and ADHD. She was placed in special education classes through age 13. After that, she was homeschooled.

Josie was 18 years old at time of trial. She does fifth-grade level homework and testified that the last book she read was "Diary of a Wimpy Kid," which is intended for late elementary and middle-school readers.

Lilly testified that, because of Josie's cognitive deficits, Josie cannot distinguish between people's good and bad intentions and cannot protect herself from harm. Josie does not live independently and cannot work or provide her own food, shelter, and medical care.

By the time Josie turned 14, Lilly and Ron had separated. Ron shared a house with his brothers, Zurita and Sam. Lilly lived nearby with Josie. Lilly's household also included Lilly's brother, Trey, and Josie's younger brother, Dan. The parents' houses were within walking distance of each other. Josie and Dan primarily lived with Lilly, but they would visit Ron during the week and stay overnight with him on

---

[2]    All first names are pseudonyms.

3

the weekends. When Josie stayed with Ron, she usually slept on a pallet in his bedroom.

### A. Sexual abuse and outcry

Josie and Zurita had a playful relationship. Josie frequently watched TV in Zurita's room, almost always with the door open. Josie spent the night of her 14th birthday, on Christmas Eve in 2012, at Ron's home. She did not sleep in her usual place because the house was full of relatives who had traveled to spend Christmas with the family. Josie slept on the floor in Sam's room. Zurita lay on his side next to Josie. He reached under the blankets to touch her vagina. Josie reported this incident as the first time Zurita touched her inappropriately.

Soon thereafter, Zurita started to touch and lick Josie's breasts as well. When Josie would lie on Zurita's bed to watch TV, Zurita would lie close behind Josie and reach under the blanket to place his fingers on or into her vagina. If Zurita heard or saw someone coming near the room, he would move away from Josie.

Josie recalled one incident when Zurita locked the door to his bedroom after she entered. He asked Josie if he could lick her vagina. She refused several times but eventually let him. Josie also recounted another incident that occurred when she was lying on Zurita's bed watching TV. Zurita got on the bed, lay behind Josie, reached into her underpants, and penetrated her vagina with his fingers. Josie told Zurita he was hurting her and pushed his hand away.

4

Eventually, Zurita touched Josie's vagina almost every day she was there. He would also touch her anus. One night, Zurita exposed his penis and touched it near or on her anus. In the same incident, Zurita also touched his penis to Josie's vagina but did not penetrate it.

The last incident occurred when Josie was 15 years old. One night, as Zurita came out of Ron's room, he noticed that Josie was dancing by herself in the living room. Josie immediately stopped and sat on the floor. Josie recounted that Zurita "just gave [her] that look like he wanted something," so she followed him to his room. Zurita locked the door and had Josie suck his penis until he ejaculated. The ejaculate landed on Josie's hands and pants. Zurita told Josie not to tell anyone and that he would wash her pants. Josie changed into shorts and left her stained pants on the sofa.

The next day, Josie returned to her mother's house and went to her bedroom. When Lilly found Josie, she was lying on her bed. Her face was flushed and she looked like she had been crying. Lilly asked Josie, "[w]hat happened? Are you upset? What's wrong?" Josie began crying and told Lilly what Zurita had done to her. Lilly confirmed that she was the first person over the age of 18 to whom Josie disclosed Zurita's abuse.

Lilly asked Josie if she would tell her Uncle Trey about Zurita's conduct, and Josie said she was willing. When Trey joined them, he saw that Josie was crying,

5

and she looked scared, sad, and heartbroken as he and Lilly asked her questions. Josie described the same incidents that she previously had disclosed to Lilly. When asked why she had not told anyone about the abuse before, Josie explained that she "was saving [Zurita] from going to jail," and "saving [his] life." Also, she believed that if she revealed the abuse, Zurita "would hate [her] and wouldn't look at [her] or talk to [her] ever again."

After Lilly, Trey, and Josie finished their discussion, Trey called Dan, who was at his father's house. Trey asked Dan to look for the pants that Josie had been wearing when Zurita ejaculated on her. Dan found the pants in a pile of dirty clothes in the laundry room. Trey picked up Dan and drove home. Once inside the house, Trey put the pants in a clean plastic bag, sealed it, and stashed it on a high shelf in his bedroom.

Lilly arranged for Josie to meet with a psychiatrist, and then she called the Kyle Police Department and reported the sexual assaults. She gave the sealed plastic bag containing Josie's pants to Detective J. Swonke. Swonke conducted separate interviews with Lilly, Dan, Trey, and Zurita about the allegations. He also collected DNA samples from Josie and Zurita.

Swonke interviewed Zurita in an unlocked room; Zurita could leave at any time. The jury heard an audio recording of the interview. When Swonke asked Zurita if his semen would be found on Josie's clothing, Zurita responded "probably."

6

Zurita explained to Swonke that he had ejaculated into the toilet the night before and saw Josie use his bathroom the next day. Zurita speculated that when Josie used the bathroom, her pants touched the toilet seat or the floor near the toilet where some of the ejaculate may have fallen. Swonke next asked Zurita how Josie could have known that Zurita was uncircumcised, Zurita responded, "I don't know."

Zurita volunteered to take the blame for Josie's sexual assault, even though he denied having committed it. Swonke testified that, before he interviewed Zurita, he had never had a child abuse suspect tell him "I didn't do it, but I'll own up to everything." Zurita also told Swonke that if he went to court, no one would "see it [his] way," and that he knew he "would go to jail and be labeled a sex offender." When Swonke ended the interview, Zurita left the police station.

A Department of Public Safety employee performed serology testing on Josie's clothing. She concluded that the stain on Josie's pants appeared to be a singular deposit of wet semen, explaining that sitting on dried semen on a toilet seat or brushing against dried semen on a bathroom floor could not have created such a stain. A DNA analyst for the Department of Public Safety testified that, to a reasonable degree of scientific certainty, the profile of the DNA found on Josie's pants was consistent with Zurita's DNA profile. The jury also heard testimony from J. Mott, a trained, certified, and experienced sexual-assault nurse examiner, concerning Josie's medical history which she collected and relied on in conducting

7

the forensic examination. Mott testified that her examination showed trauma to Josie's hymen that had healed and was a type of injury consistent with blunt force trauma.

### B. Proceedings in the trial court

The State initially brought three counts of indecency with a child by sexual contact against Zurita in case number CR-14-0693. The State later filed another case charging Zurita with two additional counts of sexual assault of a child and three counts of indecency with a child by sexual contact. That case was assigned number CR-16-0646. Before trial, Zurita was reindicted on the three counts originally brought under case number CR-14-0693, and all eight counts against him were tried under case number CR-16-0646. After Zurita's conviction on all counts in case number CR-16-0646, the State moved to dismiss the earlier case, and the trial court granted the motion.

## DISCUSSION

### I. Appellate Jurisdiction

Zurita's notice of appeal challenges both his convictions in CR-16-0646 and the dismissal of charges in CR-14-0693, assigned appellate case numbers 01-17-00274-CR and 01-17-00275-CR, respectively. We lack jurisdiction over the Zurita's appeal of the dismissal of initial charges.

8

There is no constitutional right to appellate review of criminal convictions. *See Phynes v. State*, 828 S.W.2d 1, 2 (Tex. Crim. App. 1992). The Texas Legislature confers the right of appeal in criminal cases, and a party may appeal only from judgments of conviction or authorized orders. *See* TEX. CODE CRIM. PROC. art. 44.02 TEX. R. APP. P. 25.2(a)(2); *see also Ragston v. State*, 424 S.W.3d 49, 52 (Tex. Crim. App. 2014). Although statute allows the state to appeal an order dismissing an indictment, it does not give the defendant a corresponding right. *See* TEX. R. APP. P. 25.2(a)(2); *see also Petty v. State*, 800 S.W.2d 582, 583–84 (Tex. App.—Tyler 1990, no writ) (applying federal law holding that dismissal of indictment is not appealable order).

Because there is no judgment of conviction or appealable order in trial court case CR-14-0693, we lack jurisdiction over that appeal. *See State v. Sanavongxay*, 407 S.W.3d 252, 259 (Tex. Crim. App. 2012). We therefore dismiss appeal number 01-17-00274-CR for lack of jurisdiction.

Zurita has the right to appellate review of the judgments of conviction in appeal number 01-17-00275-CR. *See* TEX. CODE CRIM. PROC. art. 44.02. We therefore address his issues challenging those judgments.

## II.    Closing Argument

Zurita contends that the trial court erred by giving the jury an instruction during closing argument that was not included in the charge. He further contends

that the trial court erred in overruling Zurita's objection, based on speculation, to the State's comment on the meaning of Zurita's statement during his interview with Swonke, in response to Swonke's summary of the accusations against him, when Zurita stated, according to the State, "I'm not agreeing with you. I'm just listening."

## A. Preservation of error and standard of review

To preserve an issue regarding improper jury argument for appellate review, a defendant must object to the jury argument and pursue the objection to an adverse ruling. *Estrada v. State*, 313 S.W.3d 274, 303 (Tex. Crim. App. 2010); *Mathis v. State*, 67 S.W.3d 918, 926–27 (Tex. Crim. App. 2002); *Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007); *see also* TEX. R. APP. P. 33.1(a) (providing that, to preserve complaint for appellate review, complaint must be made to trial court by timely request, objection, or motion that states ground for ruling sought with sufficient specificity to make trial court aware of complaint); *Threadgill v. State*, 146 S.W.3d 654, 670 (Tex. Crim. App. 2004) (holding that because defendant failed to object to jury argument, he forfeited right to raise issue on appeal).

We review a trial court's ruling on an objection to improper argument for abuse of discretion. *See Garcia v. State*, 126 S.W.3d 921, 924 (Tex. Crim. App. 2004). "The trial court does not abuse its discretion unless its determination lies outside the zone of reasonable disagreement." *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010).

10

## B.    Oral instruction

Zurita complains that the trial court committed reversible error by instructing the jury during closing argument that "[t]here is no statute of limitations on the eight counts of this indictment."  During the State's closing, the prosecutor told the jury, "As long as we allege a date before the indictment and before the statute of limitations run out."  The trial court interjected,

> Can I interrupt you just a second there? Because I noticed there was no mention of the statute of limitations in the charge. There should have been. That's an omission by us. There is no statute of limitations on the eight counts of this indictment.[3]

Zurita's counsel did not timely object to the trial court's oral instruction.  In the defense closing, Zurita's counsel reiterated that no statute of limitations applies to sexual offenses against children.  Because he did not object in the trial court and affirmatively stated the same proposition, we hold that Zurita has waived appellate review of this issue.

## C.    Silence during police interview

On appeal, Zurita contends that the trial court erred in overruling his objection to the portion of the State's closing, where the prosecutor argued that Zurita must be guilty because he raised no protest during Detective Swonke's recitation of the

---

[3]    The trial court's instruction is a correct statement of Texas law.  *See* TEX. CODE CRIM. PROC. art. 12.01(1).

accusations against him.  Zurita maintains that this remark was an improper comment on his silence.  The State argued:

> Let's talk about defendant's statement. And part of this is what he told Detective Swonke. And [prosecutor co-counsel]'s probably going to talk to you more about what he said in court today. You can't see what's going on because it's all audio, but I think you can kind of infer what's going on a little bit. Swonke, at the very beginning, is giving the defendant kind of a rundown of what the accusations are. And you hear the defendant say this: I'm not agreeing with you. I'm just listening. So what is the defendant sitting there doing probably?

At trial, Zurita interposed an objection that the State was improperly speculating as to "what the defendant is doing."  The trial court overruled the objection, and the State continued:

> What do you think he's doing after he's sitting there, been explained that "she's accusing you of licking her vagina, of sucking your penis"? Is an innocent person going to sit there and do this: "I'm not agreeing with you.  I'm just listening"? Absolutely not.  Sexual assault of a child is one of the worst accusations ever.  Do you know what the innocent person is going to be doing?  "Hell, no, I didn't do that.  There is absolutely no way.  She's lying."  I didn't do it but I'll take the fall. That's what he says.  I didn't do it but I'll take the fall.

Zurita's objection did not inform the trial court that he intended to object to the State's argument as a comment on the defendant's silence, and even if it had, that objection does not apply.  The objection in the trial court does not comport with the challenge on appeal. *See* TEX. R. APP. P. 33.1(a)(1); *see also Bennett v. State*, 235 S.W.3d 241, 243 (Tex. Crim. App. 2007) (no error preserved where objection

12

at trial does not comport with the complaint on appeal). The State's remarks concerned Zurita's statements and behavior during the noncustodial interview with Swonke, not any attempt by Zurita to invoke his Fifth Amendment right. *See Herrera v. State*, 241 S.W.3d 520, 524–25 (Tex. Crim. App. 2007) (Fifth Amendment and state statutory protections do not preclude admission of statement that does not stem from custodial interrogation). Finally, Zurita waived his Fifth Amendment right to remain silent by voluntarily taking the stand in his own defense. *See Ramirez v. State*, 74 S.W.3d 152, 155 (Tex. App.—Amarillo 2002, pet. ref'd) (citing *Nelson v. State*, 765 S.W.2d 401, 403 (Tex. Crim. App. 1989)); *see also Felder v. State*, 848 S.W.2d 85, 99 (Tex. Crim. App. 1992) ("Once an appellant decides to testify at trial he opens himself up to questioning by the prosecutor on any subject matter which is relevant."). Accordingly, we hold that Zurita has not properly preserved any Fifth Amendment challenge to his convictions.

## III. Evidentiary Complaints

Zurita next complains about the trial court's admission of testimony from Lilly as an outcry witness as well as its admission of testimony from Josie, whom the trial court found competent to testify.

### A. Standard of review

We review a trial court's decision to admit or exclude evidence under an abuse-of-discretion standard. *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim.

App. 2000). *See Buentello v. State*, 512 S.W.3d 508, 516–17 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd) (applying abuse-of-discretion standard to review ruling under outcry-witness statute). A trial court abuses its discretion when its decision lies outside the zone of reasonable disagreement. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990).

## B. Outcry witness testimony

Zurita challenges the propriety of the trial court's admission of Lilly's testimony as an outcry witness on two grounds. First, he complains that no evidence shows that Josie is a "person with a disability" within the meaning of the article 38.072 of the Texas Code of Criminal Procedure. Second, he contends that no evidence shows that Lilly qualifies as an outcry witness. Neither challenge is availing.

### 1. Applicable law

The Code of Criminal Procedure makes an exception to the hearsay rule to allow for admission of outcry hearsay testimony in the prosecution of sexual offenses against minors and persons with a disability. *See* TEX. CODE CRIM. PROC. art. 38.072. Under article 38.072, the State may designate an outcry witness to testify about the disclosure of abuse by a child or a person with a disability, as long as the witness is the "first person, 18 years of age or older, other than the defendant, to whom the child or person with a disability made a statement about the offense." *Id.*

14

§ 2(a)(3); *see Garcia v. State*, 792 S.W.2d 88, 91 (Tex. Crim. App. 1990). The Code defines "a person with a disability" as "a person 13 years of age or older who because of age or physical or mental disease, disability, or injury is substantially unable to protect the person's self from harm or to provide food, shelter, or medical care for the person's self." TEX. CODE CRIM. PROC. art 38.072, § 3. Before a designated outcry witness may testify about the complainant's disclosure, the trial court must find, "in a hearing conducted outside the presence of the jury, that the statement is reliable based on the time, content, and circumstances of the statement." TEX. CODE CRIM. PROC. art 38.072, § 2(b)(2).

## 2. Analysis

The State designated Lilly as the outcry witness. The trial court conducted an examination of Lilly's eligibility to testify as an outcry witness outside the presence of the jury. The State elicited from Lilly the following testimony about Josie's status as a disabled person:

> State: Are you aware as to whether or not your daughter was ever enrolled in a school special need program?
>
> Lilly: Yes.
>
> State: And what was the basis for that enrollment?
>
> Lilly: MMR and ADHD.
>
> . . .
>
> State: And is there a process to enroll a student in those classes?
>
> Lilly: Yes. They did testing on her.

15

State: Meaning she had to qualify to be enrolled in those classes.

Lilly: Yes, she did.

State: And she, in fact, was qualified?

Lilly: Yes.

Lilly testified that Josie never acquired a GED and does not have a job. She opined that Josie possibly could work in some capacity, but she lacked the ability to provide shelter or food for herself, or to obtain medical care when necessary. Josie would be entitled to receive disability benefits, Lilly explained, but she was told that Josie would have to wait until this criminal proceeding was resolved before she could apply for them. Lilly observed that, due to Josie's mental condition, Josie is unable to distinguish between people who act with her best interest in mind and those who don't; she "trusts everybody."

Zurita contends that this evidence does not support a finding that Josie was substantially unable to protect herself from harm or to provide food, shelter, or medical care for herself. The State elicited testimony from Lilly, however, that Josie's cognitive deficits make her unable to care for herself. She cannot live independently or protect herself from individuals who might harm her. This testimony tracks the functions identified in the statute as grounds for determining whether the State is entitled to have an outcry witness testify for "a person with a disability." *See* TEX. CODE CRIM. PROC. art 38.072, § 1. Accordingly, we hold that the trial court acted within its discretion in allowing Lilly to testify as an outcry-

16

witness. *See Buentello*, 512 S.W.3d at 518–20; *Torres v. State*, 424 S.W.3d 245, 259 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd); *see also Morgan v. State*, 365 S.W.3d 706, 708–09 (Tex. App.—Texarkana 2012, no pet.) (finding evidence sufficient to support reasonable inference that victim was disabled person where school records and developmental history were consistent with diagnosis of intellectual disability, even though victim had worked at ice cream shop and could ride his bicycle downtown without assistance; victim suffered brain injuries during birth, attended special education classes while in school, and at age 29, still lived with his mother).

Zurita next complains that the trial court erred in allowing Lilly to testify as an outcry witness because the evidence did not show that Lilly was 18 years of age or older when Josie made the outcry. *See* TEX. CODE. CRIM. PROC. art. 38.072, § 2(a)(3). The record shows the contrary. During the hearing, the State asked Lilly:

> State: . . . [Y]ou're 18 years or older?
> Lilly: Yes.
> . . .
> State: . . . [A]re you the first person 18 years or older, to your knowledge, that Josie talked about the abuse with Paul?
> Lilly: Yes.

Accordingly, this complaint is without merit.

## C.    Josie's competency as a witness

Zurita next contends that Josie should not have been permitted to testify because no evidence shows that she understood the obligation of an oath, or that she knew that she could be punished for telling a lie.

Generally, every person is presumed competent to testify. TEX. R. EVID. 601(a). A witness is competent to testify if she (1) can intelligently observe events at the time of their occurrence, (2) has the capacity to recollect those events, and (3) has the capacity to narrate those events to the jury. *See Hogan v. State*, 440 S.W.3d 211, 213–14 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd).

A witness's competency is a preliminary question for the trial court to determine. *See* TEX. R. EVID. 104(a). The trial court is not bound by the rules of evidence in determining whether a witness is competent. *Gilley v. State*, 418 S.W.3d 114, 121 (Tex. Crim. App. 2014). We review a trial court's decision that a witness is competent to testify under an abuse-of-discretion standard, considering all of the witness's testimony. *Rodriguez v. State*, 772 S.W.2d 167, 170 (Tex. App.—Houston [14th Dist.] 1989, pet. ref'd); *Beavers v. State*, 634 S.W.2d 893, 895 (Tex. App.—Houston [1st Dist.] 1982, pet. ref'd); *see Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990).

In a hearing outside the jury's presence, Josie testified that she knew the difference between the truth and a lie:

> State: So if I stated that your name was Jeffrey, would that be the truth or a lie?
>
> Josie: A lie.
>
> State: Why is that?
>
> Josie: Because my name is [Josie].
>
> State: If I stated . . . your birthday was in October, would that be the truth or a lie?
>
> Josie: A lie.
>
> State: Why—why is that?
>
> Josie: Because my birthday is on December 24th.
>
> State: Okay, and if I stated that your mom—her name is [Lilly], would that be the truth or a lie?
>
> Josie: The truth.
>
> State: Why is that?
>
> Josie: Because her name is [Lilly].

After Josie indicated that she did not know the time or the day of the week, the Court inquired:

> Court:[…] if I said that desk is brown, is that a fact.
>
> Josie: Yes, it's brown.
>
> Court:[…] if I were to say that desk was green, would that be a fact?
>
> Josie: No, it's not green.

The trial court ruled that Josie was competent to testify.

Zurita complains that the trial court erred because the court did not ensure that Josie understood the obligation of an oath and the penalty of perjury for giving false testimony. The Court of Criminal Appeals, however, has determined that a

demonstration that the witness understands the difference between the truth and a lie provides a basis for a determination that the witness is competent. *See Gilley*, 418 S.W.3d at 121. In *Gilley*, the Court stated that "[a] trial court may inquire as to whether the witness "possesses the capacity to appreciate the obligations of the oath [to tell the truth while testifying]—or can at least distinguish the truth from a lie." *Id.* Here, Josie's answers satisfied the trial court that she understood the difference between the truth and a lie. The trial court thus acted within its discretion in finding Josie competent to testify.

### D. Admissibility of sexual-assault nurse examiner's medical-history testimony

Zurita contends that the trial court erred in overruling his hearsay objection to the testimony about Josie's medical history—relating to Zurita's assaults against her—from the nurse who conducted Josie's sexual-assault nurse examination (SANE). The Rules of Evidence contain an exception to the hearsay rule that permits testimony about a person's medical history when collected for diagnosis or treatment. *See* TEX. R. EVID. 803(4). Zurita contends that the nurse's testimony did not fall within the exception because she was unqualified to diagnose or treat Josie.

The purpose of a SANE is to determine whether the victim has been sexually abused and needs medical attention. Generally, a patient's statements to a sexual-assault nurse examiner, made in the context of a SANE and pertinent to the purpose of medical diagnosis and treatment, are admissible because the

20

circumstances support a reasonable inference that the victim understands the need to be truthful. *See Franklin v. State*, 459 S.W.3d 670, 674, 677–78 (Tex. App.—Texarkana 2015, pet. ref'd); *Prieto v. State*, 337 S.W.3d 918, 920–21 (Tex. App.—Amarillo 2011, pet. ref'd). Texas courts routinely admit testimony from sexual-assault nurse examiners under Rule 803(4). *See Wells v. State*, ___ S.W.3d ___, 2017 WL 6759029, at *4 (Tex. App.—Fort Worth 2017, pet. ref'd) (citing *Beheler v. State*, 3 S.W.3d 182, 189 (Tex. App.—Fort Worth 1999, pet. ref'd)); *Bargas v. State*, 252 S.W.3d 876, 896 (Tex. App.—Houston [14th Dist.] 2008, no pet.).

Nurse Mott explained the protocol and purpose of the SANE in detail. She explained that she asks the patient for details about the assault so she can know where to look for trauma and how to treat the patient. She confirmed that she received a history of the assault from Josie and her mother for the purpose of Josie's diagnosis and treatment. The trial court acted within its discretion in admitting the nurse examiner's testimony.

## IV. Sufficiency of the Evidence Identifying Zurita as the Perpetrator

Zurita challenges the sufficiency of the evidence supporting the jury's finding that he committed the offenses against Josie. Specifically, he claims that Josie failed to identify him in the courtroom as the perpetrator, and that her failure to do so renders the evidence insufficient to support the verdicts.

We apply a legal-sufficiency standard of review in determining whether the evidence supports each challenged element of a criminal offense. *See Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S. Ct. 2781, 2788–89 (1979); *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). Under this standard, we view all of the evidence in the light most favorable to the verdict and determine whether a rational factfinder could have found the essential elements of the crime beyond a reasonable doubt. *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011) (relying on *Jackson*, 443 U.S. at 318–19, 99 S. Ct. at 2788–89). We defer to the jury's resolution of conflicts in the evidence. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

In her testimony, Josie confirmed that Zurita was in the courtroom and described his shirt: "green stripes, brownish, yellowish." This testimony is sufficient evidence of identity. Even though the State did not use the preferred practice of declaring, "let the record reflect that the witness has identified the defendant," the jury could evaluate Josie's in-court identification of the defendant. *See Miller v. State*, 667 S.W.2d 773, 775 (Tex. Crim. App. 1984); *Williams v. State*, 196 S.W.3d 365, 368 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd). In *Williams*, we held that the record contained sufficient evidence of identity where the victim identified the man with the "white T-shirt" on as the man who robbed him, despite the prosecutor's failure to ask the court to let the record reflect that the victim had

22

identified the defendant. 196 S.W.3d at 367. As in *Williams*, Zurita was the only person on trial, and he interposed no objection concerning any potential for confusion or misidentification caused by the in-court identification procedure. *See id.* at 368 (distinguishing *Rohlfing v. State*, 612 S.W.2d 598, 601 (Tex. Crim. App. 1981), in which defendant preserved improper-identification complaint). In addition, the State adduced evidence that the DNA in the semen found on Josie's pants was consistent with Zurita's DNA profile, which constitutes some evidence identifying him as the perpetrator of the offenses. We therefore conclude that legally sufficient evidence supports the identification of Zurita as the perpetrator of the crimes against Josie.

## CONCLUSION

We dismiss the appeal of trial court case number CR-14-0693 for want of appellate jurisdiction. We affirm the trial court's judgments of conviction in trial court case number CR-16-0646.


Jane Bland
Justice

Panel consists of Justices Keyes, Bland, and Massengale.

Do not publish. TEX. R. APP. P. 47.2(b).